DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Debra Sykes, appeals from her conviction in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Sykes was secretly indicted along with twenty-two other individuals by virtue of her interaction with Vera Strong, a former Ohio Department of Taxation employee accused of altering individual income tax returns. Sykes retained multiple refund checks from the State of Ohio after Strong used her position at the Tax Department to alter Sykes's individual income tax forms on her behalf. The matter proceeded to a bench trial, and the trial court found Sykes guilty of receiving stolen property in the amount of $500 or more in violation of R.C. 2913.51(A). Sykes now appeals from the trial court's judgment and raises two assignments of error for our review. *Page 2 
 II Assignment of Error Number One "THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT APPELLANTS['] CONVICTION OF RECEIVING STOLLEN (sic) PROPERTY."
 Assignment of Error Number Two "APPELLANT'S CONVICTION OF RECEIVING STOLEN PROPERTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} In her first assignment of error, Sykes argues that her conviction for receiving stolen property is based on insufficient evidence. In her second assignment of error, Sykes argues that her conviction is against the manifest weight of the evidence. We disagree.
 {¶ 4} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 274. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[Sufficiency is required to take a case to the jury[.] *** Thus, a determination that [a] conviction is supported by the weight of the evidence will also be *Page 3 
dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
Accordingly, we address Sykes's challenge to the weight of the evidence first, as it is dispositive of her claim of sufficiency.
 {¶ 5} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 6} R.C. 2913.51(A) provides that "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." One "acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Reasonable cause entails determining whether a person of ordinary prudence and care would believe that the property had been *Page 4 
obtained through the commission of a theft offense." State v.Overholt, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, at ¶ 22.
 {¶ 7} Vera Strong testified that she worked at the Ohio Department of Taxation for approximately twenty-two years before she resigned as a result of these events. Strong admitted that she used her position to alter individual income tax documents on the behalf of friends and family members so that they would receive a bigger refund from the State of Ohio. Strong further admitted that she expected her friends and family members to compensate her in the amount of $50-100 every time she altered documents on their behalves. Strong testified that she altered Sykes's tax forms on three different occasions and that Sykes paid her $100, $100, and $120, respectively. In 2003, Strong altered Sykes's tax return by increasing Sykes's tax withholding from $822 to $1,282, which resulted in Sykes being issued an additional check for $400. In 2004, Strong altered Sykes's tax return by increasing Sykes's tax withholding from $949 to $1,599, which resulted in Sykes being issued an additional check for $477. Finally, in 2005, Strong altered Sykes's tax return by increasing Sykes's tax withholding from $997 to $2,199, which resulted in Sykes being issued an additional check for $1,000.
 {¶ 8} Strong testified that she agreed to alter Sykes's tax returns in part for her own personal gain and in part because Sykes, a family member by marriage, was suffering from financial hardship. Although Strong was unable to say whether or not Sykes received a letter from the State of Ohio, Strong indicated that individuals generally receive a formal letter from the State before the issuance of their additional refund check to notify them that their reported withholding amount has been adjusted. Strong admitted that she agreed to testify against Sykes and numerous other individuals on behalf of the State in exchange for a more favorable plea arrangement. *Page 5 
 {¶ 9} Ohio State Patrol Trooper Rick Wells testified that he interviewed Sykes on March 2, 2007 after investigating Strong and discovering that Sykes had received three fraudulent refund checks. Sykes told Trooper Wells that she had no knowledge of tax related matters and paid companies such as HR Block to complete her tax returns each year. Sykes denied ever asking Strong to alter her tax forms or compensating Strong for doing so. Trooper Wells admitted on cross-examination that Strong's trial testimony varied from her statements during their initial interview regarding the amount of money that Sykes had paid her for altering Sykes's tax returns. Trooper Wells confirmed that Strong originally told him that Sykes had paid her between $15-20 per refund check, but testified at trial that Sykes had paid her between $100-120 per check. He explained, however, that individuals frequently try to minimize their involvement or the severity of their crimes at first and that much more information generally comes to light as an investigation progresses.
 {¶ 10} Maxine Banks, Sykes's younger sister, testified on behalf of the defense in an attempt to discredit Strong. Banks testified that Strong had contacted her regarding Sykes's trial in an attempt to have Banks further implicate Sykes and corroborate Strong's version of the events. Banks claimed that Strong asked her to testify that Sykes had known that Strong was altering her tax returns when in fact she had no such knowledge. Yet, Banks admitted that she also had participated in Strong's scheme and that she and Strong had been good friends until they had a falling out. Banks received several additional refund checks from the State of Ohio as a result of Strong altering her income tax forms. Furthermore, she testified that until Trooper Wells informed her that her refunds were the product of fraud she simply assumed that the extra money was a "gift[] from God." *Page 6 
 {¶ 11} Finally, Sykes testified on her own behalf and denied any involvement in Strong's scheme. Sykes admitted to calling Strong on one occasion to ask her a tax question about whether or not she could claim her daughter as a dependent on her tax return. She testified that she told Strong that she was having some financial difficulty. Sykes claimed that Strong told her she could not claim her daughter as a dependent, but that Strong would check to see if there was some other way to increase Sykes's refund. Sykes received an additional refund check after her conversation with Strong, but claimed that she did not associate the extra refund with Strong. She was merely "thankful" and "felt it was an act of God[.]" Sykes also testified that Strong was the one to contact her on two additional occasions and inquire about her tax returns. According to Sykes, Strong altered her tax returns without telling her and without expecting any form of compensation in return. Additionally, while Sykes started her testimony by indicating that she and Strong had a "very strong" relationship with one another, she later testified that she never called Strong to thank her after receiving her first additional refund check because they were not "real close."
 {¶ 12} Based on our review of the record, we cannot say that the trial court lost its way in convicting Sykes for the receipt of stolen property. The record reflects that Sykes accepted additional refund checks from the State of Ohio with reasonable cause to believe that Strong had obtained the extra money through a theft offense. See R.C. 2913.51(A); Overholt at ¶ 22. Sykes received additional checks each time after speaking with Strong. Furthermore, Strong testified that Sykes compensated her for the tax return alterations. We will not second guess the trial court's decision to believe Strong's testimony on this point instead of Sykes, who claimed that Strong altered her tax returns without her knowledge and without expecting anything in return. Sykes's argument that her conviction is against the manifest weight of the evidence lacks merit. *Page 7 
 {¶ 13} Having disposed of Sykes's challenge to the weight of the evidence, we similarly dispose of her sufficiency challenge. SeeRoberts, supra, at *2. Sykes's first and second assignments of error lack merit.
 III {¶ 14} Sykes's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
WILLIAM R. BAIRD FOR THE COURT
 MOORE, P. J. DICKINSON, J. CONCUR *Page 8 
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1